**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN JEAN-PIERRE, | : | CIVIL ACTION NO. 1:08-CV-0991 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| RONNIE R. HOLT, C. MOORE, | : | |
| A. JORDAN, A. BRANNING, | : | |
| HARRELL WATTS, D. SCOTT | : | |
| DODRILL, and HARLEY G. LAPPIN, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Steven Jean-Pierre ("Jean-Pierre"), a federal inmate formerly

incarcerated at the United States Penitentiary at Canaan ("USP Canaan"),

Waymart, Pennsylvania, commenced this Bivens[1] action on May 21, 2008.  (Doc. 1.)

Presently pending is a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b) and a motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56, filed on behalf of all named defendants, employees of the

Federal Bureau of Prison ("BOP").  (Doc. 14.)  For the reasons set forth below, the

motions will be granted.

---

[1] Bivens actions are the federal counterpart to 42 U.S.C. § 1983 claims
brought against state officials.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004)
(citing Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001)).

## I.    **Motion to Dismiss**

### A.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level");

2

<u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not

dismiss a complaint for failure to state a claim if it contains "enough factual matter

(taken as true) to suggest the required element.  This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element."  <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 556).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  <u>See</u> <u>Grayson v.

Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d

113, 116-17 (3d Cir. 2000).

### B.    Allegations of the Complaint

On June 3, 2007, Jean-Pierre approached kitchen staff worker Phile and

complained that the food portion on his lunch tray was too small.  (Doc. 1, at 3, ¶ 15.)

Defendant Branning, who was in the vicinity, replied that the portion was

adequate.  Jean-Pierre requested that Branning "prove" that the amount was

adequate.  (Doc. 1, at 4, ¶ 15.)  Defendant Branning returned with a measuring cup

and determined that the amount was more than adequate.  (<u>Id.</u>)  Jean-Pierre

replied that it was not an accurate measurement because the cup measured liquids,

not solids.  Branning replied "in an arrogant way 'a cup is a cup don't matter

what.'" (<u>Id.</u>)  Jean-Pierre looked to Phile, who informed him that he was not

responsible for putting the food on the tray.  (<u>Id.</u>)  He alleges that he took the tray

from the counter and while walking away stated "its [sic] okay, he will filed [sic] a

3

bp-8, bp-9, bp-10 to try to have the food problem solved.  Then plaintiff walked to a table where he sat and had lunch." (<u>Id.</u>)

Two hours later, he was called to the lieutenant's office and was given a misconduct for being insolent to defendant Branning.  (Doc. 1, at 4, ¶ 16.)  He informed the lieutenant that the report was written in retaliation for him stating that he would be filing a grievance to resolve a food problem and that most of his conversation was with Phile, not Branning, and at no time was he insolent to either officer.  (Doc. 1, at 5, ¶ 16.)  He also questioned why, given the seriousness of the offense, he was not immediately charged and taken to the Special Housing Unit ("SHU").  (<u>Id.</u>)  The lieutenant replied that the offense was "indeed serious and such a serious offense would call for immediate detention in SHU.  (Doc. 1, at 5, ¶ 17.)  The lieutenant also allegedly stated "that he didn't know why officer Branning took two hours to report the so called incident." (<u>Id.</u>)  Jean-Pierre was then escorted to the SHU.

On June 5, 2007, he appeared before Unit Disciplinary Committee ("UDC") members Moore and Jordan.  (Doc. 1, at 5, ¶ 19.)  At that time, he informed the UDC that he was not insolent and that he was written up in retaliation for stating that he would be filing a grievance regarding the food problem.  (<u>Id.</u> at ¶ 20)  He requested witnesses and asked the UDC to review the mess hall surveillance video tape.  (<u>Id.</u> at 21.)  No witnesses were spoken to and the video tape was not reviewed.  Based on the statement of the reporting officer, the UDC found that Jean-Pierre committed

the prohibited act and sanctioned him to the loss of thirty days of phone and commissary privileges. (Id. at ¶ 22.)

He appealed to defendant Holt seeking expungement of the incident. He also requested that Holt investigate by calling witnesses and reviewing the video surveillance tape. (Doc. 1, at 6, ¶ 25.) In denying the appeal, "defendant Holt completely ignored the fact that plaintiff specifically requested that Holt reinvestigated [sic] the matter by calling (witnesses) which the plaintiff named in the appeal and by reviewing the video tape himself." (Doc. 1, at 6,¶ 27.)

Jean-Pierre's appeal to the next level of review resulted in defendant Dodrill remanding the matter to the UDC because the section citing the evidence that supported the finding of guilt was incomplete. (Doc. 1, at 7, ¶ 29.) The UDC reissued their decision, again finding him guilty of the prohibited conduct.

He unsuccessfully pursued all appellate avenues of relief. According to Jean-Pierre, defendant Watts issued the following decision at the final level of review:

> Our review of your disciplinary proceedings indicates substantial compliance with program statement 5270.07, Inmate Discipline and Special Housing Unit. The UDC's decision was based upon the greater weight of the evidence. We find it reasonable for the UDC to have made this determination. Records indicate you appeared before the UDC, were advised of your rights, and made a statement. Although you dispute the charge, the evidence is sufficient to support the finding. You state video evidence was not considered by the UDC. There is no indication in the record of a request by you that video evidence be considered. The UDC considered your statement, but determined the eyewitness statement of reporting officer supported the conclusion that you comitted [sic] the prohibited act. You also contend witnesses were not interviewed. There are no witnesses at UDC hearings. You did not name any witnesses during the investigation into the incident report. Delivery of the UDC

decision, even if delayed, has no bearing on the validity of that decision. There is no evidence the incident report was motivated by retaliation.

The decision of the UDC is appropriate and consistent with program statement 5270.07, Inmate Discipline and Special Housing Units.  The sanction[s] imposed were commensurate to the severity category of the prohibited act commited [sic].

 Your appeal is denied.

(Doc. 1, at 8-9, ¶ 33.)

In the matter *sub judice*, Jean-Pierre alleges that defendant Branning filed a false incident report in retaliation for exercise of his constitutional rights.  (Doc. 1, at 12, ¶¶ 2, 3.)  Additionally, Jean-Pierre contends that he was the victim of unconstitutional retaliation, for which each of the defendants is responsible.  (Doc. 1, at 10, ¶ 35.)  Further, he contends that UDC Committee members defendants Moore and Jordan, and defendants Holt, Dodrill, and Watts, the individuals who reviewed the UDC's actions, violated his Fifth Amendment due process rights and "retaliated against [him] for his protected right."  (Doc. 1, at 9, ¶¶ 12-14.)  Finally, he alleges that defendant Lappin, the Director of the BOP, violated his due process rights when he "overlooked the fact that all the above names violated plaintiff's due process right to the Fifth Amendment . . . " and joined in the retaliation.  (Doc. 1, at 14, ¶ 15.)

### C.    Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Bivens actions are the federal counterpart to § 1983 claims. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown, 250 F.3d at 800).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials."  Schrob v. Catterson,  948 F.2d 1402, 1409 (3d Cir. 1991).

### 1.    Personal Involvement/*Respondeat Superior*

Jean-Pierre claims that defendants Holt, Dodrill, and Watts violated his due process rights and joined in the retaliation against him.  These defendants seek dismissal of the complaint based on their lack of personal involvement in conduct amounting to a constitutional violation.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and

7

acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, 845 F.2d at 1207-08. Participation in the after-the-fact review of a grievance or appeal proceeding is not enough to establish personal involvement. See, e.g., Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006); see also Rode, 845 F.2d at 1208 (finding the filing of a grievance insufficient to demonstrate actual knowledge of the underlying harm, which is required for personal involvement); Mincy v. Klem, Civ. A. No. 1:08-CV-0066, 2009 WL 331432, at *4 (M.D. Pa. Feb. 9, 2009); Croom v. Wagner, Civ. A. No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006).

The allegations of wrongdoing levied against Holt, Dodrill, and Watts are based solely upon their respective roles in the prison grievance review system. According to the complaint, Holt adjudicated Jean-Pierre's appeal from the UDC disposition finding him guilty of insolent behavior with respect to the cafeteria incident. Jean-Pierre does not allege that Holt possessed contemporaneous, personal knowledge of the events that allegedly transpired in the mess hall with Branning. See Rode, 845 F.2d at 1207 (requiring allegations of "personal direction or of actual knowledge and acquiescence"). Rather, Jean-Pierre simply takes umbrage with Holt's decision on appeal. He alleges that Holt "completely ignored the fact that [Jean-Pierre] specifically requested that . . . Holt reinvestigate[] the

matter by calling (witnesses) . . . and by reviewing the video tape." Such allegations fail to state a constitutional infirmity, and simply attack the extent to which Holt conducted an all-encompassing, exhaustive review. Holt's mere participation in the after-the-fact grievance review process—and his decision to deny Jean-Pierre's grievance appeal—are insufficient as a matter of law to establish § 1983 liability. See Pressley, 266 F. App'x at 218; Brooks, 167 F. App'x at 925.

Jean-Pierre directs similar allegations against Dodrill, and Watts. Dodrill purportedly heard Jean-Pierre's appeal from Holt's unfavorable grievance decision. The complaint avers that in spite of Jean-Pierre's requests, Dodrill refused to "grant the appeal, expunge the false incident report . . . [,] interview eye witnesses named in the appeal[,] and review the video tape." (Doc. 1 at 7, ¶ 30.) Instead, Dodrill reviewed the record and held that "the record reflect[s] substantial compliance" with prison regulations. (Doc. 1 at 7, ¶ 31.) After his appeal was rejected by Dodrill, Jean-Pierre appealed to Watts, who purportedly "denied his appeal without any valid reason." (Doc. 1 at 7-8, ¶ 32.) Notwithstanding this characterization of the appeal outcome, Jean-Pierre did receive correspondence from Watts, which explained that "[t]he UDC's decision was based upon the greater weight of the evidence. We find it reasonable for the UDC to have made this determination." (Doc. 1, at 8, ¶ 33.) In this fashion, the complaint simply alleges that Dodrill and Watts were participants in the after-the-fact review of Jean-Pierre's grievance proceeding, which is insufficient to establish personal involvement. See Pressley, 266 F. App'x at 218; Brooks, 167 F. App'x at 925.

Likewise, Jean-Pierre's conclusory claim regarding Lappin is subject to dismissal. Lappin is alleged to be the director of the Bureau of Prisons, with an office in Washington, D.C. (Doc. 1 at 3, ¶ 12.) The complaint contains but one averment implicating Lappin, in which Jean-Pierre obliquely asserts that Lappin overlooked the constitutional violations committed by UDC, Watts, and Dodrill. (See Doc. 1, at 9, ¶ 34.) To maintain a claim for supervisory liability, a plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Jean-Pierre attempts to impose liability on Lappin based on his supervisory role as director of the BOP. He fails to allege Lappin's personal involvement in an underlying constitutional deprivation. Defendant Lappin does not maintain an office at USP Canaan, nor is there any suggestion of either personal involvement in the underlying incident, or knowledge and acquiescence.

Jean-Pierre's complaint fails to state a cognizable claim against Holt, Watts, Dodrill, and Lappin. To the extent these officials were involved in the circumstances underlying Jean-Pierre's case, it was merely in their role as after-the-fact reviewers of a grievance or appeal proceeding. This is insufficient to establish personal involvement rising to the level of a constitutional violation and the claims against these defendants will be dismissed. Leave to amend is futile.

10

See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

    2.   <u>Conspiracy</u>

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct.  <u>Oatess v. Sobolevitch</u>, 914 F.2d 428, 432 n.8 (3d Cir. 1990). <u>See</u> <u>also</u>, <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between individuals.  <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545.  A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Rose</u>, 871 F.2d at 366.  Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  <u>Young</u>, 926 F.2d at 1405 n.16.

11

Viewing the complaint in the light most favorable to Jean-Pierre, he has failed to state a viable conspiracy claim against defendants. He baldly asserts that "the other Defendants, in conjunction with defendant Branning . . . retaliated against [him]." (Doc. 1, at 10, ¶ 35.) Jean-Pierre does not explain the nature of the conspiracy, he does not allege how or when the conspirators purportedly reached an understanding or agreement, and he fails to offer specific facts tending to show a meeting of conspiratorial minds. The complaint is thus insufficient to demonstrate concerted action, and it therefore warrants dismissal. The court will grant Jean-Pierre leave to amend his complaint, however, in order to allege sufficient facts to suggest that defendants were engaged in a conspiracy to violate Jean-Pierre's constitutional rights. See Grayson, 293 F.3d at 108.

3.     Fourteenth Amendment Equal Protection

Jean-Pierre argues in both his opposition brief (Doc. 21) and sur-reply (Doc. 23), that his equal protection rights were violated. "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997) (quoting U.S. Const. amend. XIV, § 1). This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Wren v. United States, 517 U.S. 806, 813 (1996), or any other suspect classification. See, e.g., Bakke v. Cal. Bd.

12

of Regents, 438 U.S. 265, 291 (1978) (holding that "the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and stating that "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

In the instant matter, Jean-Pierre's complaint is devoid of any allegations that he was treated differently from those who were similarly situated to him. Rather, the complaint explains that Jean-Pierre was temporarily transferred to the SHU for violating prison regulation 312. (Doc. 1, at 5, ¶ 20.) He does not allege that this regulation was applied to him differently than it was applied to other inmates. Jean-Pierre asserts that throughout the grievance process, he was denied the ability to present witnesses or to ensure that the videotape evidence was reviewed. However, he does not allege that other inmates were permitted to present witnesses in their own respective appeals, or that defendants reviewed videotape evidence in other grievance appeals. Jean-Pierre does not allege that the application of prison regulations to his case was in some way different than the manner in which the regulations were applied to others. In short, the complaint contains no assertions of disparate treatment and Jean-Pierre's bald assertion of equal protection violations is without merit. This claim will accordingly be dismissed. Jean-Pierre will be granted leave to amend his complaint in order to allege facts sufficient to state a cognizable equal protection violation, in accordance with the foregoing discussion. See Grayson, 293 F.3d at 108.

13

4.    Due Process

Jean-Pierre alleges that the failure of defendants Moore and Jordan to interview witnesses and review the videotape during the disciplinary proceedings violated the Due Process Clause of the Fifth Amendment.  Due process protection is not triggered unless there is a deprivation of a legally cognizable liberty interest. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003).  Jean-Pierre's due process claim is cognizable but lacks merit.

Although the Supreme Court has found that the loss of good time credits entitles prisoners to appropriate due process, see Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974), the question of whether a sanction implicates a liberty interest is not answered by looking at good time credits alone.  Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483.  Specifically, protected liberty interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Sandin, 515 U.S. at 484 (internal citations omitted).  "[T]he baseline for determining what is "atypical and significant"—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her

conviction in accordance with due process of law."  <u>Griffin v. Vaughn</u>, 112 F.3d 703,

706  (3d Cir. 1997) (quoting <u>Sandin</u>, 515 U.S. at 486).

The Due Process Clause does not, however, subject an inmate's treatment by

prison authorities to judicial oversight as long as the degree of confinement or

conditions to which the inmate is subject are within the sentence imposed and do

not otherwise violate the Constitution.  <u>Fraise v. Terhune</u>, 283 F.3d 506, 522 (3d Cir.

2002).  "Discipline by prison officials in response to a wide range of misconduct falls

within the expected perimeters of the sentence imposed by the court of law."

<u>Sandin</u>, 515 U.S. at 486.

In the matter *sub judice*, defendants argue that because Jean-Pierre was only

sanctioned with loss of commissary and telephone privileges for a period of thirty

days, his due process claim must fail.  The court agrees.  Initially, it is noted that

the first step taken should a prisoner violate, or attempt to violate, institutional

rules requires filing an incident report and conducting an investigation pursuant to

28 C.F.R. § 541.14.  Following the investigation, the matter is then referred to the

UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner

has committed a prohibited act, it may impose minor sanctions.  If the alleged

violation is serious and warrants consideration for more than minor sanctions, or

involves a prohibited act listed in the high category offenses, the UDC refers the

matter to a DHO for a hearing.  28 C.F.R. § 541.15.  The instant matter remained

with the UDC, which chose to impose the minor sanctions of loss of phone and

commissary privileges for a period of thirty days.  Significantly, limits on telephone

15

usage are ordinary incidents of prison confinement.  <u>See</u> 28 C.F.R. § 540.100(b)

(regulation requiring the BOP to allow the inmate to make one telephone call per

month.)  Furthermore, inmates have no federal constitutional right to purchase

items from a commissary.  <u>Travillion v. Allegheny County Bureau of Corrections</u>,

Civil No. 2:07-CV-928, 2008 WL 2699998 at*2 (W.D.Pa. July 7, 2008) (collecting cases

and finding that "[i]nmates have no federal constitutional right to be able to

purchase items from a commissary")  Hence, the motion to dismiss will be granted

with respect to the due process claim lodged against UDC Committee defendants

Jordan and Moore.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d

at 108 (observing that the district court may exercise its discretion to dismiss a

claim with prejudice when leave to amend would be futile).

   **D.     Conclusion**

   Based on the foregoing, all claims against defendants Jordan, Moore, Holt,

Dodrill, Watts and Lappin will be dismissed.  Additionally, the conspiracy and equal

protection claims lodged against defendant Branning will be dismissed.  The court

will now turn to the only remaining issue; the retaliation claim against defendant

Branning.

## II.   **Summary Judgment Motion**

### A.   **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

### B.   **Statement of Facts**

At lunchtime on June 3, 2007, Jean-Pierre was handed a "common fare tray/religious diet tray" with a small portion of food.  (Doc. 20, Declaration of Jean-Pierre ("Jean-Pierre Dec."), at I, ¶ II.)  His dissatisfaction with the portion of onions caused him to approach kitchen staff worker Phile.  (Id.)  According to Jean-Pierre, Phile admitted that the portion looked small, however, because he was not responsible for making the trays, he suggested that Jean-Pierre complain to the food administrator.  (Id.)  Defendant Branning, who is employed by the BOP at

USP-Canaan as a Cook Foreman, approached Jean-Pierre and stated that there was nothing wrong with the food portion.  (Doc. 17-2, at 37, Declaration of Rodney Branning, Jr. ("Branning Dec."), ¶ 1; Doc. 20, Jean-Pierre Dec., at 1, ¶ II.)  In response, Jean-Pierre stated "So I told defendant [Branning] 'prove to me that the food portion is not inadequate.'" (Doc. 20, Jean-Pierre Dec., at 1, ¶ II.)  Defendant Branning obtained a measuring cup and placed onions into the cup and informed Jean-Pierre that the measurement proved that the portion was adequate.  He challenged the use of a "liquid" measuring cup.  (Id. at 2)  Defendant Branning responded that "a cup is a cup no matter what."  (Id.)  Jean-Pierre represents that he took his tray and walked a few steps and then said "don't worry I'll file a bp-8, bp-9, bp-10, and bp-11 to have the food problem resolved."  (Id.)  He states he then walked away and sat at a table and ate his lunch.  (Id.)

Within a few hours of the incident, he was called to the Lieutenant's office and was informed that defendant Branning wrote an incident report charging him with Code 312 violation of Insolence Toward Staff.  (Doc. 17-2, at 39; Doc. 20, Jean-Pierre Dec., at 2, ¶ II.)  Branning states that "[b]ecause Jean-Pierre chose to raise his voice and gesture aggressively while he complained about the amount of his portion of onions, I wrote incident report # 1605826, which stated:

> While standing in the dining hall I was approached by Inmate Jean-Pierr[e] (reg# 49152-053) he stated his common fare was not correct.  I proceeded to meet inmate Jean-Pierr[e] on the mainline to measure his vegetables.  I measured the onions on inmate Jean-Pierr[e]'s tray and his tray measured over 1/4 cup.  The amount of onions to be on the tray was 1/4 cup.  Inmate Jean-Pierr[e] got upset and started yelling and raising his voice to me.  He had stated that I used a liquid measure not a dry

measure.  I tried explaining that a cup is a cup no matter what you are
measuring and inmate Jean-Pierr[e] just yelled louder.  Inmate Jean-
Pierr[e] just threw his tray on the counter and said he did not want it and
as he was walking yelling he was going to file a bp-8, bp9, bp10, bp11.

(Doc. 17-2, at 37, ¶ 2)  After a reading of the incident report, he was taken to the

Special Housing Unit ("SHU").  He remained in the SHU for two days while the

incident was investigated.

Disciplinary proceedings were held before the UDC on June 5, 2007.  During

the proceedings, Jean-Pierre commented that "it was just a misunderstanding."

(Doc. 17-2, at 39.)  Based on defendant Branning's statement contained in the

incident report, the UDC found that he committed the prohibited act and

sanctioned him to loss of phone and commissary privileges for a period of thirty

days.  (Id.)

Jean-Pierre appealed the decision to defendant Holt *via* a request for

administrative remedy.  (Doc. 17-2 at 35.)  The appeal was denied.  (Id. at 34.)  He

appealed that finding to the Regional Director, defendant Dodrill, who concluded

that "[a] review of the disciplinary proceedings reveals the UDC did not thoroughly

complete Section 19 of the incident report advising you of the specific evidence

relied upon to determine you committed the prohibited act.  Therefore, the

disciplinary action is being remanded and the UDC is being instructed to provide

you with an amended UDC report."  (Id. at 24.)  On August 27, 2007, the UDC issued

an amended report containing the following information:

19. Committee Decision is Based on the Following Information: Based on
the statement of the reporting officer that Jean-Pierre started yelling and

> raising his voice at reporting officer, and the eye witness account of reporting officer Jean-Pierre threw his tray on the counter, UDC finds Jean-Pierre was insolent towards a staff member, thus committing the prohibited act.

(Doc. 17-2, at 26.)  He sought relief *via* a request for administrative remedy, which was denied by defendant Holt.  (Id. at 34.)  His appeal to the regional level was denied by defendant Dodrill.  (Id. at 31).  His final level of appeal to the National Inmate Appeals was denied by defendant Watts as follows:

> You state video evidence was not considered by the UDC.  There is no indication in the record of a request by you that video evidence be considered.  The UDC considered your statement, but determined the eyewitness statement of the reporting officer supported the conclusion that you committed the prohibited act.  You also contend witnesses were not interviewed.  There are no witnesses at UDC hearings.  You did not name witnesses during the investigation into the incident report.  Delivery of the UDC decision, even if delayed, has no bearing on the validity of the decision.  There is no evidence the incident report was motivated by retaliation.

(Doc. 17-2, at 28.)

## C.    Discussion

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must

demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  Jean-Pierre's retaliation claim against defendant Branning fails for multiple reasons.

First, "[a]s a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."  Rauser, 241 F.3d at 333; see also, Jerry v. Williamson, 2006 WL 3741840, 1 (3d Cir. 2006).  While inmates "do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment . . . , lawful incarceration brings about withdrawal or limitation of privileges and rights for various reasons, including institutional security."  Cooper v. Tard, 855 F.2d 125, 128 (3d Cir. 1988); see also, Pell v. Procunier, 417 U.S. 817, 822 (1974) (stating that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

Jean-Pierre contends that the statement "don't worry I'll file a bp-8, bp-9, bp-10, and bp-11 to have the food problem resolved" constituted protected conduct for retaliation purposes.  The filing of a grievance clearly falls within the ambit of the First Amendment.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  However, at the time the incident report was issued by defendant Branning, Jean-Pierre had

not filed a grievance; he simply stated that it was his intention to do so.  In fact, Jean-Pierre never filed a grievance concerning the food problem.  And, there is nothing in the record that indicates that he attempted unsuccessfully to file a grievance, or that defendants interfered with his right to file a grievance.  Consequently, he fails to demonstrate that he was engaged in protected activity at the time the incident report was issued.

Further, although allegations of being falsely charged with misconduct in retaliation for filing a grievance generally satisfy the "adverse action" requirement, see Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (finding that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment), as noted above, at the time the incident report was issued, no grievance concerning the food problem had been filed and there is no evidence that he was prevented from filing such a grievance.

Moreover, the last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him.  The court employs a burden-shifting regime to determine whether a causal link exists.  The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected

22

activity.  See id.  If the defendants prove that they would have made the same

decision absent the protected conduct for reasons reasonably related to a legitimate

penological interest, they will prevail in the retaliation action.  See id. at 334.

Because of this "deference" afforded prison officials in the area of institutional

security, "prison officials may still prevail by proving that they would have made

the same decision absent the protected conduct for reasons reasonably related to a

legitimate penological interest."  Rauser, 241 F.3d at 334.

Defendants argue that "[w]hile Jean-Pierre retains his rights to free speech

in the prison setting, those rights are limited by the legitimate penological interest

to maintain order."  (Doc. 22, at 10, citing Turner v. Safley, 482 U.S. 78, 89 (1986)

and Pell v. Procunier, 417 U.S. 817, 822 (1974).  Defendant Branning declares that

he filed the incident report because "Jean-Pierre chose to raise his voice and

gesture aggressively while he complained about the amount of his portion of

onions."  (Doc. 17-2, Branning Dec., at 37, ¶ 2.) The UDC concluded he was insolent

because he was yelling and raising his voice at defendant Branning.  (Doc. 17-2, at

26.)  Also taken into account was the fact that it was the second incident report for

insolence within the past year.  (Doc. 17-2, at 31.)  Although Jean-Pierre disagrees

with the factual findings of the UDC, they were upheld after pursuing all levels of

review.  Defendants have established that the same action would have been taken

in the absence of any protected activity for reasons related to the legitimate

penological goal of maintaining order in the institution.

Defendants' motion for summary judgment on the retaliation claim will be granted.

### D.      Conclusion

For the reasons set forth above, summary judgment will be granted in favor of defendant Branning on the retaliation claim.

## IV.    <u>Conclusion</u>

Based on the above, defendants' motion to dismiss and for summary judgment (Doc. 14) will be granted.

An appropriate order follows.


   <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        March 31, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN JEAN-PIERRE,** | : | **CIVIL ACTION NO. 1:08-CV-0991** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **RONNIE R. HOLT, C. MOORE,** | : | |
| **A. JORDAN, A. BRANNING,** | : | |
| **HARRELL WATTS, D. SCOTT** | : | |
| **DODRILL, and HARLEY G. LAPPIN,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 31st day of March, 2009, upon consideration of defendants'

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 14), and

for the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that:

1.　The motion to dismiss is GRANTED with respect to defendants Moore, Jordan, Holt, Dodrill, Watts, and Lappin.  The complaint is dismissed in its entirety with respect to these defendants.  Additionally, the conspiracy and equal protection claims against defendant Branning are dismissed.

2.　The motion for summary judgment is GRANTED with respect to the retaliation claim against defendant Branning.  The Clerk of Court is directed to ENTER judgment in favor of defendant Branning and against plaintiff.

3.　Plaintiff shall be permitted to file, on or before April 22, 2009, an amended complaint that alleges one or more of the following:

　　a.　Sufficient facts to suggest that defendants were engaged in a conspiracy to violate plaintiff's civil rights;

  b.  Facts demonstrating that Jean-Pierre was treated differently than similarly situated inmates during the grievance appeals process.

4.  Aside from the amendments identified in Paragraph 3, no further amendments to plaintiff's complaint will be permitted absent a showing of compelling circumstances.

         <u>S/ Christopher C. Conner</u>
         CHRISTOPHER C. CONNER
         United States District Judge