# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN JEAN-PIERRE**, | : | **CIVIL ACTION NO. 1:08-CV-0991** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOM GUBBIOTTI**, | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

This <u>Bivens</u>[1] action is presently proceeding *via* an amended complaint, filed

on June 24, 2009, against sole defendant Tom Gubbiotti ("Gubbiotti") (Doc. 34).

Plaintiff Steven Jean-Pierre ("plaintiff") alleges that defendant Gubbiotti violated

his right to equal protection and access to the courts when he rejected his request

for administrative relief against Officer Branning, Federal Bureau of Prisons Cook

Foreman.[2]  Pending is a motion to dismiss, or in the alternative for summary

---

[1] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).  <u>Bivens</u> allows a citizen suffering a compensable constitutional injury to invoke general federal question jurisdiction to obtain an award of monetary damages.

[2] Plaintiff initiated this action on May 21, 2008, alleging claims of conspiracy, equal protection and retaliation against several Federal Bureau of Prison ("BOP") defendants, including Officer Branning.  (Doc. 1.)  On March 31, 2009, a memorandum and order were entered granting summary judgment on behalf of defendant Branning on the retaliation claim, and dismissing the claims of conspiracy and equal protection against all defendants.  (Doc. 25.)  However, plaintiff was afforded the opportunity to amend his complaint to set forth sufficient facts to establish either a conspiracy or equal protection claim.  When he amended the complaint, plaintiff chose to proceed only against his Case Manager, Tom Gubbiotti, who was mentioned in the original complaint but not named as a defendant.

judgment, filed on behalf of Gubbiotti (Doc. 39). The motion for summary judgment will be granted based on plaintiff's failure to exhaust his administrative remedies.

## I.    Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## II.    Statement of Material Facts

Plaintiff was incarcerated at the United States Penitentiary at Canaan, Pennsylvania, from May 9, 2005, through September 26, 2007. (Doc. 40-2, Declaration of Case Manager Thomas Gubbiotti ("Gubbiotti Decl."), at 3, ¶ 3.) On June 3, 2007, following an incident in which he "became insolent towards a staff member during the noon meal by raising [his] voice, flailing [his] arms, throwing [his] tray, and yelling at the staff member about the quantity of food [he] received,"

Officer Branning issued an incident report for Insolence Towards a Staff Member, Code 312. (Doc. 40-2, at 26, 28.) On June 5, 2007, following a hearing before the Unit Disciplinay Committee ("UDC"), he was found guilty of a Code 312 violation and sanctions were imposed. (Id. at 28.)

The Federal Bureau of Prisons ("BOP") has a three level administrative remedy process which is a method by which an inmate may seek formal review of a complaint related to any aspect of his confinement. Pursuant to this protocol, set forth at 28 C.F.R. §§ 542.10-542.19, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief. If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined (BP-9). (Doc. 40-2, Declaration of Susan Albert, Paralegal Specialist at the United States Department of Justice assigned to the Consolidated Legal Center, which maintains computer files relating to utilization of the administrative claims process, ("Albert Decl."), at 7, ¶ 5.) An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process. See § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP (BP-10, BP-11). (Doc. 40-2, Albert Decl., at 7, ¶¶ 5, 6.)

On June 6, 2007, plaintiff filed a request for administrative relief with the warden, case number 456413, challenging the issuance of the incident report and

the UDC's findings and sanctions. (Doc. 40-2, at 27.) On June 11, 2007, plaintiff filed

an informal request with defendant Gubbiotti concerning the same issues and

complaining that the incident report was issued by Officer Branning in retaliation

for plaintiff stating that he was going to "write up a bp 8, and bp 9, grievance to

resolve[] the food problem . . . " and seeking to have the report expunged. (Doc. 40-

2, Gubbiotti Decl., at 4, ¶¶ 5, 6; (Doc. 30, at 3.) In his June 13, 2007 response,

defendant Gubbiotti informed plaintiff that the request would not be resolved

because it was a duplicate of case number 456413. (Doc. 30, at 3.) Gubbiotti

provided him with a BP-9 form in the event that he wanted to further pursue the

matter. (Id.)

Case number 456413, was initially rejected by the warden because it

contained more than one continuation page. (Id. at 26.) He refiled the request on

June 22, 2007. (Id.) Thereafter, he fully exhausted the administrative process with

regard to the issuance of the incident report by Officer Branning and the UDC

findings and sanctions. (Doc. 40-2, Albert Decl., at 9, ¶ 12.)

At no time did he file a request for administrative relief with respect to the

claims that defendant Gubbiotti violated his right to equal protection and access to

the courts.

**III.**   **Discussion**

   **A.**   **Exhaustion of Administrative Process**

The Prison Litigation Reform Act (PLRA) requires prisoners to present their

claims through an administrative grievance process before seeking redress in

federal court.  The act specifically provides as follow:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner confined
> in any jail, prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. §1997e(a).  Prisoners must exhaust administrative remedies as to any

claim that arises in the prison setting, regardless of any limitations on the kind of

relief that may be gained through the grievance process.  See Porter v. Nussle, 534

U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  "[I]t is beyond

the power . . . of any . . . [court] to excuse compliance with the exhaustion

requirement, whether on the ground of futility, inadequacy or any other basis."

Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr.

Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422

U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its

mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also

mandates that inmates "properly" exhaust administrative remedies before filing

suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Nussle, 534 U.S. at 525)).

It is undisputed that plaintiff failed to seek relief *via* the administrative process with respect to the claims he lodges against defendant Gubbiotti. In both his opposition brief and sur reply plaintiff refers to defendant's rejection of his "BP 8 ½" and how this action prevented him from pursuing his claim against Officer Branning.[3] (Docs. 46, 48.) Moreover, the claim against Branning was administratively exhausted. However, at no point does he demonstrate that he administratively exhausted or was somehow prevented from exhausting the claims against defendant Gubbiotti. Being the party adverse to summary judgment, plaintiff must raise "more than a mere scintilla of evidence in [his] favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Plaintiff has failed to meet his burden. Accordingly, the motion for summary judgment will be granted based on plaintiff's failure to exhaust his administrative remedies.

---

[3]Notably, defendant Gubbiotti rejected plaintiff's claim against Officer Branning as a duplicate of case number 456413, which challenged Officer Branning's issuance of the incident report and was administratively exhausted.

**B.** **Merits**

Even if plaintiff were to have exhausted his administrative remedies, he

would not prevail on the merits of either of the claims he pursues.

1. <u>Equal Protection</u>

Plaintiff alleges that defendant's rejection of his BP 8 ½ violated his

Fourteenth Amendment rights and that this treatment was "different than others

similarly situated and that there is no rational basis for the difference in treatment."

(Doc. 34, at 4, ¶ 13.)

"The Equal Protection Clause commands that no State shall 'deny to any

person within its jurisdiction the equal protection of the laws.'" <u>Vacco v. Quill</u>, 521

U.S. 793, 799 (1997) (quoting U.S. CONST. amend. XIV, § 1). This is not a command

that all persons be treated alike, but, rather, a direction that all persons similarly

situated be treated alike. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432,

439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth

Amendment is the prevention of official conduct discriminating on the basis of

race," <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996), or any other suspect

classification. <u>See, e.g.</u>, <u>Bakke v. Cal. Bd. of Regents</u>, 438 U.S. 265, 291 (1978)

(holding that "the guarantee of equal protection cannot mean one thing when

applied to one individual and something else when applied to a person of another

color" and stating that "racial and ethnic distinctions of any sort are inherently

suspect and thus call for the most exacting judicial examination"). In the instant

matter, plaintiff fails to go beyond the pleadings and demonstrate that he was

discriminated against on the basis of race or any other suspect classification. Consequently, his equal protection claim fails.

      2.    <u>Access to the Courts</u>

Inmates have the right to adequate, effective, and meaningful access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977). However, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996). The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. <u>Id.</u> at 356. Clearly this is not the case as plaintiff's claim against Officer Branning was presented to this court and fully adjudicated on the merits. (Doc. 25, at 20-23, at 25 ¶ 2.)

**IV.**    <u>**Conclusion**</u>

Based on the foregoing, defendant's motion for summary judgment (Doc. 39) will be granted. An appropriate order follows.

                     <u> S/ Christopher C. Conner   </u>
                     CHRISTOPHER C. CONNER
                     United States District Judge

Dated:     June 21, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN JEAN-PIERRE**, | : | **CIVIL ACTION NO. 1:08-CV-0991** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOM GUBBIOTTI**, | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

_____AND NOW, this 21st day of June, 2010, upon consideration of defendant's

motion to dismiss or, in the alternative, for summary judgment, and in accordance

with the foregoing memorandum, it is hereby ORDERED that:

1.    The motion for summary judgment (Doc. 39) is GRANTED. The Clerk of Court is directed to ENTER judgment in favor of defendant Gubbiotti and against plaintiff.

2.    The Clerk of Court is further directed to CLOSE this case.

3.    Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).

                        <u> S/ Christopher C. Conner   </u>
                        CHRISTOPHER C. CONNER
                        United States District Judge